Argued and submitted May 30, reversed and remanded for entry of judgment of conviction for misdemeanor assault in the fourth degree and for resentencing December 27, 2006

STATE OF OREGON,
*Respondent,*

*v.*

RENO MARTIN GATT,
*Appellant.*

02CR0778; A123702

149 P3d 1220

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Katherine H. Waldo, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega,* Judges.

_____
* Ortega, J., *vice* Richardson, S. J.

LANDAU, P. J.

**LANDAU, P. J.**

ORS 163.160(3)(c) provides that the offense of assault in the fourth degree is a Class C felony if the assault is "witnessed by," among others, the defendant's minor child. In this case, defendant assaulted his own minor child. The issue is whether the minor who is the victim of an assault may also be said to "witness" that assault, elevating the crime to a felony. The trial court held that the same person could be both the victim and the witness of an assault under ORS 163.160(3)(c). Defendant appeals, arguing that, under the specific wording of the statute and the Supreme Court's construction of it in *State v. Glaspey*, 337 Or 558, 100 P3d 730 (2004), a minor victim of an assault is not a "witness" to the assault. We agree with defendant and reverse and remand for entry of judgment of conviction for misdemeanor assault in the fourth degree and for resentencing.

The relevant facts are not in dispute. Defendant physically assaulted his 14-year-old son, A, striking him in the face, throwing him to the ground, and repeatedly "throwing him around." A suffered a bloody nose, bruises, and scratches as a result. Defendant was charged by indictment with felony fourth-degree assault. ORS 163.160. Although fourth-degree assault generally is punishable as a Class A misdemeanor, ORS 163.160(2), it is elevated to a Class C felony under certain circumstances, including when the assault is "committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child." ORS 163.160(3)(c). The statute further provides that an assault is witnessed "if the assault is seen or directly perceived in any other manner by the child." ORS 163.160(4). The indictment against defendant charged that he had "unlawfully and recklessly cause[d] physical injury to [A]" and that the assault "was witnessed by [A], defendant's minor child."

Defendant demurred to the indictment, arguing that the same person cannot be both the "victim" and a "witness" of an assault for purposes of ORS 163.160(3). The trial court overruled the demurrer, and defendant's case was tried to a jury. At the close of the state's case, defendant moved for a judgment of acquittal, arguing again that the same person

cannot be both an assault's victim and its witness for purposes of ORS 163.160(3), and that such a reading of the statute "[d]efies English language comprehension." The court denied that motion, and the jury found defendant guilty.

On appeal, defendant assigns error to the overruling of his demurrer and to the denial of his motion for a judgment of acquittal. He argues that both assignments are controlled by the Oregon Supreme Court's decision in *Glaspey*. According to defendant, *Glaspey* stands for the proposition that ORS 163.160(3)(c) applies only when a child witnesses an assault that "transpires between others" and that the victim of the assault and the minor child who witnesses it must be different persons.

The state responds that defendant is misreading *Glaspey*. According to the state, the issue in *Glaspey* was whether a child who witnesses an assault is also thereby a victim of the crime for purposes of ORS 163.160, whereas the issue here is the converse—that is, whether a child who is the victim of an assault is also thereby a witness of that assault. The state argues that the court's conclusion in *Glaspey*—that a witness is not thereby a "victim"—simply has no bearing on the question whether an assault victim is a "witness" of the assault.

The issue thus framed is one of statutory construction. We therefore apply the interpretive method described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), examining the text of the statute in context and turning, if necessary, to legislative history and other aids to construction. In examining the text in context, we consider, among other things, prior judicial construction of the relevant terms. *State v. Stubbs*, 193 Or App 595, 600, 91 P3d 774 (2004) (prior judicial construction of a statute's text is relevant at the first level of analysis under *PGE*).

We begin with the text of the statute. ORS 163.160 provides:

"(1)  A person commits the crime of assault in the fourth degree if the person:

"(a)  Intentionally, knowingly or recklessly causes physical injury to another; or

"(b)  With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2)  Assault in the fourth degree is a Class A misdemeanor.

"(3)  Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"(a)  The person has previously been convicted of assaulting the same victim;

"(b)  The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230; or

"(c)  The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim.

"(4)  For the purposes of subsection (3) of this section, an assault is witnessed if the assault is seen or directly perceived in any other manner by the child."

The statute thus provides that the offense of assault in the fourth degree may be elevated to a felony if the assault is, among other things, "witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim."

In ordinary parlance, it is unremarkable to assert that a victim to an assault may be a "witness" to that assault. The dictionary defines the verb "to witness" as "to see or know by reason of personal presence : have direct cognizance of : observe with one's own eyes or ears : be present as an observer at." *Webster's Third New Int'l Dictionary* 2627 (unabridged ed 2002). As the term is ordinarily used, then, an assault victim may well witness his or her assault. Moreover, the statute itself provides that a child "witnesses" an assault "if the assault is seen or directly perceived in any other manner by the child." ORS 163.160(4). Certainly a physically assaulted child may "directly perceive" the assault.

But the statute says more than that. It employs the terms in phrasing that suggests that the legislature intended

the terms "victim" and "witness" to refer to two different persons. In particular, we note that the statute refers to the "witness" as "the person's [that is, the defendant's] or the victim's minor child." ORS 163.160(3)(c). The child is referred to in terms that reflect an apparent assumption that he or she is someone *other than* the victim. The statute likewise refers to the witness as someone who lives in the household "of the person [again, the defendant] or the victim," again reflecting an apparent assumption that the victim and the child witness are two different individuals for the purposes of this offense. *Id.*[1]

Were we merely to focus on the bare wording of ORS 163.160, we might conclude that the statute was ambiguous as to whether a child assault victim may be a "witness" to the assault, as that term is used in the statute. On the one hand, we could conclude as the state suggests, that the ordinary meaning of the term "witness" is broad enough to encompass victims of assaults. On the other hand, we could conclude as defendant contends, that the particular phrasing of the statute suggests that the legislature had a more limited usage in mind.

In *Glaspey*, however, the Supreme Court addressed the meaning of the statutory terms and reached a conclusion that renders the former possibility untenable. In *Glaspey*, the defendant assaulted his wife in front of his two children. He was charged with two separate counts of fourth-degree assault. The state prosecuted the case under the theory that both children had witnessed the assault and were thus both "victims" of the crime within the meaning of ORS 163.160. The defendant was convicted of both counts. The defendant appealed, arguing that the child witnesses were not "victims" within the meaning of the statute. The state argued that, in light of the broad, ordinary meaning of the term "victim," child witnesses were themselves "victims" of the assault.

---

[1] The statutory reference to a witness "residing within the household of the person or the victim" is especially difficult to reconcile with the more literal reading of the statute that the state proposes. If every child "victim" is a "witness" within the meaning of the statute, then the reference to a witness being a minor child who resides with the victim becomes surplusage, as the statute would essentially state that a witness is a child who lives with himself or herself.

The court disagreed with the state. The court began by acknowledging that the legislature plausibly could have chosen to employ the term "victim" in its broad, ordinary sense. "But we are dealing here with a specific criminal statute," the court explained, one "that defines a particular criminal offense for purposes of prosecution, and we therefore must focus on the words that the legislature chose to use in that statute." *Glaspey*, 337 Or at 564.

The court then turned to the specific phrasing of ORS 163.160(3)(c). Seizing on precisely the phrasing that we have mentioned, the court observed that

> "in paragraph (3)(c) (at issue in the present case), a fourth-degree assault becomes a felony if the assault is committed 'in the immediate presence of, or is witnessed by, the person's *or the victim's* minor child or stepchild or a minor child residing within the household of the person *or victim.*' (Emphasis added.) That usage of the term 'victim' is in direct contrast to the various terms describing the child witness. The premise of paragraph (c) is that the child has a particular relationship to an act (assault) that transpires between others. That relationship (witness) makes the assault more 'serious,' but it does not make the child a *victim of assault.* It follows from the text of the statute and as a matter of simple English that, at least for the purposes of ORS 163.160, the terms 'victim' and 'child' cannot be synonymous."

*Glaspey*, 337 Or at 565 (emphasis in original).

Strictly speaking, of course, the court's holding in *Glaspey* was limited to the determination that a child "witness" is not, by virtue of witnessing an assault, a "victim" under ORS 163.160, not vice versa. Not all witnesses, in other words, are victims. As the state correctly suggests, it does not necessarily follow from that holding that a child who is actually assaulted cannot be a witness; the proposition that "not all witnesses are victims" does not entail the proposition that "no victims are witnesses."

Nevertheless, it cannot be disputed that the court's holding did not rest on such a narrow logical proposition. It rested on a broader examination of the words and the relationship between those words reflected in their usage in the

specific context of the statute. The "premise" of the statute, the court held, is that the child witness has a relationship with *others*, specifically, the defendant and the victim. That reading of the statute is inconsistent with the reading that the state proposes in this case.

The state contends that such a conclusion conflicts with our decision in *State v. Goddard*, 178 Or App 538, 542-43, 37 P3d 1046, *rev den*, 334 Or 121 (2002). In that case, the issue was whether causing a victim to participate in an act of sexual conduct satisfies the element of causing the victim to "witness" such conduct within the meaning of the statute defining the offense of endangering the welfare of a minor, ORS 163.575(1)(a). The statute provides that a person commits the offense if, among other things, the person knowingly "[i]nduces, causes or permits an unmarried person under 18 years of age to witness an act of sexual conduct * * * as defined by ORS 167.060." ORS 167.060(10), in turn, defines "sexual conduct" to include "any touching of the genitals * * * in an act of apparent sexual stimulation or gratification." We concluded that a victim of that offense was also a witness, because "a victim who participates in an act of sexual conduct sees or hears the conduct, knows of it by personal presence, and has direct cognizance of it." *Goddard*, 178 Or App at 542. We rested that conclusion on the ordinary meaning of the terms, on the fact that the usage of the terms in context suggested no contrary meaning, and on legislative history that "clearly suggests that, although participation or active conduct is not required, it would suffice" to qualify a person as a "witness" to the offense. *Id.* at 543.

Clearly, the statute at issue in *Goddard* is worded differently from the one at issue in this case. ORS 163.575(1) contains no phrasing that suggests that a "victim" of a crime may not be a "witness" to it, as the Supreme Court held that ORS 163.160(3)(c) does. *Goddard* is thus distinguishable.

Assuming for the sake of argument that ambiguity remains, we have examined the legislative history to determine whether the meaning that we have concluded is clearly suggested by the text is somehow incorrect. The legislative

history suggests nothing of the sort. To the contrary, it consistently reflects a legislative concern for the effect on children of witnessing domestic violence committed *against others. See, e.g.,* Minutes, Senate Committee on Crime and Corrections, SB 553, Mar 14, 1997, 2-4 (statements of cosponsors, a sheriff's deputy, legislators, the chair of the Children's Justice Task Force, victims, and representatives of domestic violence victim support groups about the trauma that occurs when children witness attacks of domestic violence against other members of the family).

We conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on the charge of felony assault in the fourth degree.

Reversed and remanded for entry of judgment of conviction for misdemeanor assault in the fourth degree and for resentencing.